Honorable Judge Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| Riding Films, Inc.<br>　　　　　Plaintiff,<br>　vs.<br><br>Does 1- 64,<br>　　　　　Defendants | No. 2:13-cv-00288 RAJ-RSL<br><br>Declaration of Gary Marshall |

I declare and state as follows:

1. I, Gary K,. Marshall, am the attorney of record for Doe 45 with IP address 174.61.182.92 the above captioned case.

2. Except where clearly indicated, I have personal knowledge of the facts and matters stated herein.

**The Music and Movie Download lawsuits**

3. I have been an intellectual property attorney for over 27 years. I have carefully followed the music download copyright infringement cases since shortly after they started.

Declaration of Gary K, Marshall, page 1
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

4. I have followed the movie download copyright infringement cases since shortly after they started. I routinely visit several web sites that track the developments in the movie download lawsuits, including the site run by the Electronic Frontier Foundation (EFF) at www.eff.org. I belong to several email lists where attorneys across the country share information, including court filings, and discuss the latest developments in the movie download cases. Since late 2010 I have represented approximately seventy individuals who have been named in these lawsuits.

5. I consider myself well qualified to testify about the movie download cases.

6. The movie download cases, including the three case listed above, are nothing more than a way to shake down individuals and get rich quick. They are designed to identify as many possible victims as possible and intimidate those individuals into paying money to the plaintiff's attorneys. These cases were not brought to right any actual wrong.

7. In order to understand these movie download cases, it is necessary to go back to the music download cases. In the early 2000's the music industry was suffering from declining sales Meanwhile the unauthorized downloading of music files had increased. The music industry perceived, wrongly in my personal opinion, that unauthorized music downloading was a major cause of the decline in sales.

8. The U.S. music industry decided to have their trade association, the Recording Industry Association of America (RIAA) sue a number of individual file downloaders. The intent was to scare people away from downloading music files. It did not work.

9. The RIAA first tried to identify individuals through their unique Internet Protocol (IP) addresses by contacting their Internet Service Providers (ISPs) directly under color of the Digital Millennium Copyright Act (DMCA), until a federal court of appeals ruled that they could not sustain their subpoenas under authority of the DMCA. So in 2004 the RIAA began to file John

1  Doe lawsuits, naming hundreds or thousands of individuals in one lawsuit. The RIAA only knew
2  their ISP address and subpoenaed the ISPs the obtain the identities of the individuals. The RIAA
3  then sent letters to the individuals demanding that they stop downloading and that they pay the
4  RIAA a settlement amount. In the majority of these cases, the targets settled their cases for
5  amounts ranging between $3,000 and $11,000.

6      10. See for example the EFF"s history and discussion of the RIAA lawsuits, a printout of
7  which is attached to this Declaration as Exhibit A.

8      11. In 2008 the music associations announced that they would stop filing new lawsuit. Their
9  campaign had not significantly reduced music downloads and had been a public relations disaster
10 for the industry.

11     12. In 2010 a Washington DC law firm Dunlap, Grubb & Weaver decided to use the RIAA
12 model to sue individuals who have downloaded movie files.

13     13. We can not be sure, but it appears that the law firm approached the producers of the
14 movies, rather than the other way around, and offered them a cut of the take, if the producers
15 would let the law firm sue on their behalf.

16     14. The law firm would hire a technology company to go on-line and find the IP addresses of
17 people who were downloading the movie. The law firm would file a lawsuit naming around
18 4,000 people, then subpoena the ISPs for the names of the individuals. Once the law firm had the
19 names of the individuals, it would send them a demand letter offering to settle their case for a
20 number that varies, but has typically been between $2,000 and $5,000.

21     15. Assuming conservatively that the law firm was able to indentify half of the people it
22 named, or 2,000 individuals and send each of them a demand letter, if half of them agreed to pay
23 $2,000 dollars each, then the law firm would take in 2.5 million dollars per lawsuit.

24

16. Not surprisingly, many other attorneys across the country have copied this business model. One refinement on the model is to choose a pornographic movie under the assumption that people would be embarrassed about downloading such a movie and would be more likely to settle.

17. Many of these cases named thousands of defendants residing throughout the country. These cases are often dismissed due to lack of jurisdiction. We can not be sure, but it appears that the law firms behind these lawsuits are now soliciting local counsel to file lawsuits within that counsel's state, naming only defendants who reside in that state. The national counsel provides the IP addresses and the form pleadings and demand letter. The local counsel pursues the business model of scaring defendants into settling. The local counsel retains a percentage of the settlement money and passes the rest back to the national counsel.

18. Copyright trolls do not want to go to court. Doing so is costly and risky. They will pursue a few cases in court as part of their intimidation tactic, to prove that people could at least in theory actually be sued. But there is no profit for them in the lawsuits themselves. Their focus is on quick settlements.

19. The EFF has commented on these lawsuits. A printout of their comments is attached to this Declaration as Exhibit B. Here are a few sample quotes from those files.

> https://www.eff.org/deeplinks/2010/03/50-000-i-new-i-lawsuits-against-movie-downloaders
>
> This time, the lawyers involved are being explicit about their motivations: it's all about the money. "We're creating a revenue stream and monetizing the equivalent of an alternative distribution channel," said one of the attorneys involved. The cases are taken on a contingency basis, designed so that quick settlements will prove lucrative for both the firm and the copyright owners involved.
>
> https://www.eff.org/deeplinks/2012/05/hollywoods-trolls

Declaration of Gary K, Marshall, page 4
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

> The current crop of copyright trolls sue anywhere from 20 to 5,000 "John Doe" defendants in a single lawsuit, pinned to a list of Internet Protocol addresses that they claim to have seen downloading copyrighted movies using BitTorrent. Then, with the courts' permission, they send subpoenas to Internet service providers for the names and addresses of subscribers. The trolls then send threatening letters, demanding settlement payments to "make this go away" or face being dragged into court - often in a faraway state. Over 200,000 U.S. residents have been caught up in these suits, with many undoubtedly settling simply to end the harassment.

20. See also PC World's summary of these cases, a printout of which is also included in Exhibit C.

> http://www.pcworld.com/article/230515/so_youre_being_sued_for_piracy.html
>
> Copyright trolls work in a few different ways, but the end goal is the same: Threaten, scare, and embarrass people into paying a neat sum (usually between $1000 and $3000) without ever actually going to court.
>
> ………
>
> Copyright trolls don't want to go to court. Doing so is costly and risky--neither of those things is good from the standpoint of a copyright troll. It's much cheaper and easier for them if people who receive letters simply pay up, instead of forcing an actual court case.

21. See also Safety Point Products, LLC et al., *Plaintiffs* v. DOES 1-14, DOES 15-96, DOES 97-177, & DOES 178-197, Defendants, Case Nos 1:12-CV-2812, 1:12-CV-2820;1:12-CV-2831; 1:12-CV-2894, OPINION & ORDER date April 4, 2013 (attached to the Judicial Notice that accompanies the Defendants Motion to Quash as Exhibit B)

> Because IP addresses are the only identifiers of peers within a BitTorrent system, it is difficult, if not impossible, to learn the true identities of the peers in a swarm. To pursue litigation, plaintiffs in BitTorrent suits must attempt to get early discovery to learn of the actual identities of the unnamed defendants. The requests have been the subject of much criticism, for the lawsuits are rarely

Declaration of Gary K, Marshall, page 5  
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall  
9706 4th Ave. N.E., Suite 320  
Seattle, Washington 98115-2157  
Tel: (206) 524-0655

litigated. Rather, plaintiffs seek to take advantage of the resources of federal courts to force small, individual settlements.

22. By doing an Internet Search, I was able to find a redacted copy of a typical demand letter used by the Plaintiffs. See Exhibit D. The Plaintiff is demanding $3,500 from this particular defendant.

23. It is hard to know for sure, but it seems that over half of the named individuals are paying the settlement amount. I have represented in the neighborhood of 70 individuals who have been named in these lawsuits. I usually recommend that the individual not settle. But I have found that slightly over half of my clients have paid the settlement amount. This is the same percentage that has been reported many times on-line for both the music and movie download cases.

24. I believe that the method used to identify the individuals is flawed. Being an attorney, I am skeptical of anyone who professes innocence. Most of my client who have downloaded the movie file will admit it to me. About 20 percent of the people I have spoken to have professed their innocence in a believable way to me, even after I questioned them aggressively.

25. In the last few weeks I have spoken to a number of people who have received subpoena's in one of Mr. Symmes' cases.

26. One couple that came to see me recently has been named as a John Doe in one of these movie download cases. They gave me permission to repeat what they told me. They are both fairly recent immigrants from Russia. They could not possibly have downloaded the movie they are accused of downloading. They only watch films that are in Russian. They do not watch films that are in English. The only other members of their household are very young children who are not capable of using a computer,

Declaration of Gary K, Marshall, page 6
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

27. I spoke to another john doe who runs a small hotel. He offers wifi access to his guests. He told me that he and his staff did not download the movie in question. He added that he had no way of knowing and no way of controlling what his guests do on the Internet.

28. I do not offer these statements to prove whether or not these people actually downloaded the movie in question. Their statements would be hearsay if used for that purpose.

29. I offer these statements to support my state of mind. They are not hearsay when used for that purpose.

30. My experience in the present movie download case filed in federal Western District Court in Seattle has been consistent with my earlier experiences. I continue to believe that about 20 percent of the clients I have spoken to appear to have had nothing to do with downloading the movie, and neither has anyone else in their household.

31. No one can know for sure if the 20% are truly innocent. But their IP addresses may have been incorrectly identified by the Plaintiff or by their ISP. Or someone may have used their wi-fi IP access without their authority, which is very easy to do by the way and does not require physical access to their computer or even their home.

32. The method used by the Plaintiffs to prove downloading is also inherehtly flawed. Even if an individual joined a bit-torrent swarm at some point during the swarm's existence, that by itself is not proof that the defendants downloaded a movie file. The defendant could joint a swarm and not download at all, or could have downloaded only a minuscule amount of the movie file. Members of a swarm are not aware of the other members of the swarm and they do not communicate with other members.

**Related Cases**

Declaration of Gary K, Marshall, page 7
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

33. Including the present case, I am aware of a total of forty-nine lawsuits filed by the same plaintiff's attorney, Richard Symmes, alleging essentially the same activities against multiple John Does. They are:

| Case No. | Caption | Date Filed |
|---|---|---|
| 2:13-cv-00050 | R & D Film 1, LLC v. Does 1-46 | filed 01/08/13 |
| 2:13-cv-00051 | R & D Film 1, LLC v. Does 1-45 | filed 01/08/13 |
| 2:13-cv-00052 | R & D Film 1, LLC v. Does 1-41 | filed 01/08/13 |
| 2:13-cv-00053 | R & D Film 1 LLC v. Does 1-22 | filed 01/08/13 |
| 2:13-cv-00054 | R & D Film 1 LLC v. Does 1-51 | filed 01/08/13 |
| 2:13-cv-00055 | R & D Film 1 LLC v. Does 1-50 | filed 01/08/13 |
| 2:13-cv-00056 | R & D Film 1 LLC v. Does 1-44 | filed 01/08/13 |
| 2:13-cv-00057 | R & D Film 1 LLC v. Does 1-16 | filed 01/08/13 |
| 2:13-cv-00063 | Flypaper Distribution, LLC v. Does 1-19 | filed 01/09/13 |
| 2:13-cv-00194 | Private Lenders Group, Inc. v. Does 1-59 | filed 01/31/13 |
| 2:13-cv-00228 | D3 Productions, LLC v. Does | filed 02/08/13 |
| 2:13-cv-00255 | Riding Films, Inc. v. Does 1-35 | filed 02/12/13 |
| 2:13-cv-00256 | Riding Films, Inc. v. Does 1-12 | filed 02/12/13 |
| 2:13-cv-00277 | Riding Films Inc v. Does 1-44 | filed 02/13/13 |
| 2:13-cv-00278 | Riding Films Inc v. Does 1-44 | filed 02/13/13 |
| 2:13-cv-00287 | Riding Films Inc v. Does 1-65 | filed 02/14/13 |
| 2:13-cv-00288 | Riding Films Inc v. Does 1-65 | filed 02/14/13 |

Declaration of Gary K, Marshall, page 8
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

| | | |
|---|---|---|
| 1 | 2:13-cv-00289 Riding Films Inc v. Does 1-64 | filed 02/14/13 |
| 2 | 2:13-cv-00307 Zembezia Film (Pty.) Ltd. v. Does 1-47 | filed 02/18/13 |
| 3 | 2:13-cv-00308 Zembezia Film (Pty.) Ltd. v. Does 1-66 | filed 02/18/13 |
| 4 | 2:13-cv-00309 Zembezia Film (Pty) Ltd v. Does 1-66 | filed 02/18/13 |
| 5 | 2:13-cv-00310 Zembezia Film (Pty.) Ltd. v. Does 1-66 | filed 02/18/13 |
| 6 | 2:13-cv-00311 Zembezia Film (Pty.) Ltd. v. Does 1-66 | filed 02/18/13 |
| 7 | 2:13-cv-00312 Zembezia Film (Pty.) Ltd. v. Does 1-70 | filed 02/18/13 |
| 8 | 2:13-cv-00313 Zembezia Film (Pty) Ltd v. Does 1-48 | filed 02/18/13 |
| 9 | 2:13-cv-00314 Zembezia Film (Pty.) Ltd. v. Does 1-58 | filed 02/18/13 |
| 10 | 2:13-cv-00315 Zembezia Film (Pty) Ltd v. Does 1-51 | filed 02/18/13 |
| 11 | 2:13-cv-00316 Zembezia Film (Pty) Ltd v. Does 1-51 | filed 02/18/13 |
| 12 | 2:13-cv-00317 Zembezia Film (Pty) Ltd v. Does 1-18 | filed 02/18/13 |
| 13 | 2:13-cv-00318 Zembezia Film (Pty) Ltd v. Does 1-57 | filed 02/18/13 |
| 14 | 2:13-cv-00319 Zembezia Film (Pty) Ltd v. Does 1-47 | filed 02/18/13 |
| 15 | 2:13-cv-00328 The Ledge Distribution, LLC v. Does 1-43 | filed 02/20/13 |
| 16 | 2:13-cv-00329 The Ledge Distribution, LLC v. Does 1-44 | filed 02/20/13 |
| 17 | 2:13-cv-00330 The Ledge Distribution, LLC v. Does 1-71 | filed 02/20/13 |
| 18 | 2:13-cv-00455 Voltage Pictures, LLC v. Does 1-18 | filed 03/13/13 |
| 19 | 2:13-cv-00456 Voltage Pictures, LLC v. Does 1-78 | filed 03/13/13 |
| 20 | 2:13-cv-00457 Voltage Pictures, LLC v. Does 1-78 | filed 03/13/13 |
| 21 | 2:13-cv-00458 Voltage Pictures, LLC v. Does 1-22 | filed 03/13/13 |

Declaration of Gary K, Marshall, page 9
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

1  2:13-cv-00459 Voltage Pictures, LLC v. Does 1-40        filed 03/13/13

2  2:13-cv-00460 Voltage Pictures, LLC v. Does 1-52        filed 03/13/13

3  2:13-cv-00461 Voltage Pictures, LLC v. Does 1-78        filed 03/13/13

4  2:13-cv-00462 Voltage Pictures, LLC v. Does 1-18        filed 03/13/13

5  2:13-cv-00507 Elf-Man, LLC v. Does 1-152                filed 03/20/13

34. I am aware of 2,479 John Does in forty-nine lawsuits. That translates to $865,900 in filing fees that should have been and have not been paid to the court.

35. I normally do not comment on the actions of opposing counsel. However, in this case the plaintiff's attorney's actions are directly relevant to my clients' motions to quash.

36. According to his law firm website, plaintiff's counsel Richard Symmes is the managing partner of a small law firm in Seattle. He is the only attorney who lists experience outside of bankruptcy and finance, the main focus of his law firm's practice.

37. Mr. Symmes has filed lawsuits against at least 2,583 john doe defendants in a short time span. It is only logical to assume that he has no intention of pursuing most of these claims through to trial. That would be logistically impossible.

38. I once made the mistake of filing two lawsuits on the same day. I will never make that mistake again. The deadlines for various matters in each case occurred at the same time. Both cases were scheduled for trial at the same time. I got through it but it was very difficult.

39. There is no way that Mr. Symmes can pursue lawsuits against more than a very small number of the John Doe defendants. It is only logical, to assume that he is counting on most of the defendants to settle quickly.

40. Since I filed my pleadings in the three cases captioned above, I have had to speak to Judge Lasnik's case administrator many times by phone and email about the logistics of these

Declaration of Gary K, Marshall, page 10
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655

cases. The court's ECF system is apparently not designed to handle these types of cases automatically. The case administrator and other staff have had to go into each case file and make an adjustment each time an attorney appears for any of the John Doe defendants. This added burden on the court adds weight to my clients' claim that the Plaintiff should be filing each John Doe case separately and paying a separate filing fee for each case.

41. Attached to this Declaration as Exhibit E. is a blog article that appears to have been posted by the plaintiff's attorney. It is located at

http://frontierlawgroup.wordpress.com/2013/04/02/frequently-asked-questions/

42. In an article on KOMI 4 news' website at http://www.komonews.com/news/local/Illegally-downloading-movies-Studios-may-be-coming-after-you-194124661.html, Mr. Symmes states:

"It would probably be more expensive to go ahead and fight this rather than take a nominal settlement and just make this go away,"

I declare under the penalty of perjury under the law of the state of Washington that the foregoing is true and correct.

| May 6, 2013 | Seattle, King County, WA | /Gary K. Marshall/ |
| _____ | _____ | _____ |
| Date | Place (City, County, State) | Signature |

Declaration of Gary K, Marshall, page 11
No. 2:13-cv-00288 RSM-RSL

Law Offices of Gary Marshall
9706 4th Ave. N.E., Suite 320
Seattle, Washington 98115-2157
Tel: (206) 524-0655