# EXHIBIT 3

Honorable Judge Robert S. Lasnik

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

RIDING FILMS, INC

    Plaintiff,

v

DOES 1-35
DOES 1-12
DOES 1-44
DOES 1-44
DOES 1-65
DOES 1-65
DOES 1-64

    Defendants.

) Civil Case Nos.;
)
) 13-00255
) 13-00256
) 13-00277
) 13-00278
) 13-00287
) 13-00288
) 13-00289

**SUPPLEMENTAL DECLARATION OF DARREN M. GRIFFIN IN RESPONSE TO THE ORDER OF HONORABLE ROBERT S. LASNIK ON PLANTIFF'S RESPONSE TO ORDER TO SHOW CAUSE**

I, Darren M. Griffin, declare:

1. I work for Crystal Bay Cooperation CBC, "Crystal Bay", a company incorporated in South Dakota with its principal address at 110E Center Street, Suite 2013, Madison, South Dakota 57042. Crystal Bay is a provider of online anti-piracy services for the

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

motion picture industry. Before my employment with Crystal Bay, I held various positions at companies that developed software technologies. I have approximately ten years of experience related to digital media and computer technology.

2. I submit this supplemental declaration, under-oath:

    a. What criteria Plaintiff applied in deciding that the named Does (at least named via their IP addresses) were part of one swarm;

    b. Why the defined swarm downloads occurred in various time ranges; and

    c. If there were not a geographic limitation applied to the defined swarm, would the number of defendants be greater than presently named.

3. This declaration is based on my personal knowledge, and if called upon to do so, I would be prepared to testify as to its truth and accuracy.

**The criteria applied in deciding that the named Does were part of one swarm.**

4. The criteria applied in deciding which Does form a swarm is based on my experience of assisting in Rights Holders in copyright litigation, through the use of internet monitoring software.

5. In order to determine that the named Does were part of one swarm, I take into account the jurisdictional requirements of each court. In addition, there are a number of practical and technological considerations I implement to assist with the smooth running of the litigation, reduce the administrative burden place upon the Plaintiff, ISPs and the Court.

6. In the present case, I implemented four filters to refine the swarm infringement data, the details of which are set forth in the paragraphs below. It is these filters which determine the swarm members in these proceedings.

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

The First Filter (Geography)

7. In order to proceed with early discovery of the identities sought, it is my understanding that the Court must have personal Jurisdiction over potential defendants. It is also my understanding that the Does should reside within the Western District of Washington.

8. GEO-IP location technology is integrated into the monitoring software. This allows me to determine the physical location of the Does with a high degree of accuracy.

9. This technology is a filter which is applied in order to ensure that Does are within a particular jurisdiction. My understanding is there is no other method of determining an individual's physical location from an IP address.

The Second Filter (Data Retention)

10. Part of my role is to ensure that the time and effort that Plaintiff puts into obtaining disclosure of potential infringers' identities is not wasted. I understand that wastage will occur if Plaintiff instructs lawyers to prepare and file the necessary papers and the Court grants motions for early discovery, but the results of that discovery do not lead to the identities of those stealing Plaintiff's movies.

11. ISPs delete IP address information. This takes place at periodic intervals, in accordance with their internal data retention policies. Once deletion occurs, that information usually cannot be recovered. Each ISP has its own data retention policy. Such policies vary greatly and can range from seven days to one year.

12. Plaintiff faces significant obstacles in getting motions for early discovery granted before ISPs delete the relevant data. There is a significant time period between detection of the infringement to subpoenaing the ISP and receipt of the information. Accordingly, in order

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

to prevent wastage, a filter is applied to only include those IP addresses for which Plaintiff is likely to obtain information.

13. Typical timeframe is set forth below, so the Court can better appreciate the relevant periods:

    a. Once data is exported, it is filtered and sent to Plaintiff's attorney. That attorney will then prepare the necessary documents to file the complaint and motion for early discovery. This involves (1) checking the chain of title documents and conducting further inquiries, if necessary; (2) preparation of a supporting affidavit and accompanying motion for early discovery; and (3) preparing the complaint and formatting the IP address data into a form appropriate for Court use. This process may take one to two weeks, depending on the attorney's availability and the number of documents involved.

    b. Once the complaint and motion are filed, it may take anywhere from several weeks to several months before a decision is made whether or not to grant the motion for early discovery. It is not uncommon for it to take more than three months if the Court is busy. There is, as I understand it, no effective way for Plaintiff to accelerate this process.

    c. Assuming the motion for early discovery is granted, the ISPs are served with appropriate subpoenas. This process could take up to one week for the responsible attorney to complete, as the ISP may enter into correspondence relating to the subpoena.

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

    d. Upon acceptance of the subpoena, ISPs will notify their affected subscribers to inform them that they have the option to contest the release of their identities at Court, should they wish to do so. The time allowed for this is usually one month.

    e. It is only after all of the above, and following a further one to two month delay due to the time it takes ISPs to conduct searches, that the local attorney will receive the data sought.

    f. In instances where there are a large number of motions to quash, this may extend the time periods further, as some ISPs will not release the required information until those motions have been ruled upon.

14. At worst, it could take four to five months for motions for early discovery to be granted. At best, Plaintiff could have his motion granted and the ISP provide the information sought within two months.

15. During this time, some ISPs will delete their data. In order to prevent wastage, IP addresses belonging to those affected ISPs are removed as part of this filter.

16. There is, at times, a significant delay which means that Plaintiff may be forced to dismiss an entire complaint before the motion for early discovery is granted, in the event the relevant ISPs have already deleted the infringement data.

The Third Filter (Uncooperative ISPs)

17. When an ISP receives a subpoena, it may not always agree to provide Plaintiff with the information sought. This is the case with a small number of ISPs despite a court ordering release of the information.

18. Various Plaintiffs in the US enforcing their copyright on file sharing networks face this obstacle with certain ISPs. These refusals often lead to litigation that could last many

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

months, and sometimes years. Plaintiff does not have the means to engage in such litigation, against well-resourced opponents for extended periods of time.

19. It is an inefficient use of resources for IP addresses belonging to these ISPs to be included as part of the swarm and so a filter is used.

The Fourth Filter (Unusable Data)

20. There exists a category of ISPs who comply with subpoena requests, but the information they return is unusable. Various reasons exist for this:

   a. The ISP may be a provider of a public wireless hotspot;
   b. The ISP may return incomplete disclosure requests due to their incomplete records;
   c. The ISP may be an educational establishment whose IT system does not possess the technological capability of identifying who was using that internet connection at the relevant time; and
   d. The ISP may be what is called a 'VPN'. These are service providers which serial file-sharers use to deliberately evade detection of their true IP addresses.

21. ISPs falling within these categories are excluded by way of a filter.

Why the defined swarm downloads occurred in various time ranges

22. Once the filters described above have been applied, I then consider an appropriate time range for this Complaint. The factors considered are based on my understanding of the criteria the Court places if it was to find Joinder proper.

23. I am informed that Courts may request that the timeframe of infringement be sufficiently short for there to be a high likelihood that those participating in the same swarm have (1)

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

made available pieces of the movie to others within the same swarm and/or (2) the infringements arise out of the same series of transactions or occurrences.

24. It is my opinion that both are likely to be true when consideration is given to the ability of modern day computers to store a significant number of movies and the way which Bit-Torrent technology functions, as explained below.

Computer Storage Capacity of Potential Defendants

25. The cost of computer hardware has decreased significantly in recent years, and continues to do so at a rapid rate. A basic search on www.amazon.com shows that the cost of a two terabyte hard disk storage device, commonly found in modern day computers is $95[1]. It is not uncommon for sophisticated users of technology to build computers containing two such hard disks, providing a capacity of four terabytes.

26. In addition, there is a large market and demand for hard disk enclosures which have the capability to serve and store enormous libraries of content, much of which may be obtained unlawfully on file sharing networks. Such a device costs only $104.99 and has the capacity to store four, two terabyte hard disks[2]. When fully equipped with 2 terabyte hard disks, it has the capacity to store 8 terabytes of data.

27. Relatively unsophisticated users of technology may purchase a ready-built computer with a two terabyte hard disk from www.walmart.com for as little as $669.99[3]. It is, in my opinion, unlikely that a user of Bit-Torrent technology will use such a basic home

---

[1] A 2TB Seagate Barracuda Hard Disk http://www.amazon.com/gp/offer-listing/B006CKCRMQ/ref=sr_1_11_olp?s=pc&ie=UTF8&qid=1365603854&sr=1-11&keywords=2tb&condition=new

[2] A 4-bay Media Sonic Hard Drive Enclosure http://www.amazon.com/Mediasonic-HF2-SU3S2-ProBox-Drive-Enclosure/dp/B003X26VV4/ref=sr_1_1?s=electronics&ie=UTF8&qid=1365606086&sr=1-1

[3] A Hewlett-Packard PC Desktop System with a 2TB hard disk http://www.walmart.com/ip/HP-Black-Pavilion-P7-1430-Desktop-PC-with-AMD-Quad-Core-A10-5700-Accelerated-Processor-8GB-Memory-2TB-Hard-Drive-and-Windows-8-Operating-System/21805234

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

computer. I consider such users to be sophisticated users. However, I proceed to consider the capability of a computer that is readily accessible to store and distribute stolen works in the paragraphs below.

28. The size of a typical movie shared being unlawfully distributed on file sharing networks is one gigabyte. There are approximately 2,000 gigabytes in two terabytes. Therefore, a storage device of two terabytes has the capacity to store approximately 2,000 movies.

29. The time period of enforcement was therefore selected for the following reasons:

   a. Assuming the infringer had his hard disk half full of pirated films at the time of infringement, there would be approximately 1,000 movies to watch. In other words, the infringer would need to watch on average more than two movies per day to have watched his or her movie collection that year. It is my view that this would be wholly unrealistic, unless that individual spent all of his free time watching movies;

   b. For example, if an infringement took place on November 6, 2012, one may assume then that it is commonplace that the infringer did not watch the movie until December 25, 2012. This is due to the storage capacity of readily accessible modern day home computers, as set out above, and the potential for such a computer to store a large quantity of movies.

   c. However, even if I do not assume that the infringer waits so long to watch each film the first time, in my opinion, there is little reason to remove downloaded movies when the availability of storage space is not in question. Instead, it is likely that infringers build up a collection of movies once acquired unlawfully, so the movie may be enjoyed again and again without further need for the use of Bit

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

Torrent or even an internet connection. Thus, even if the unlawful download was watched on December 25, 2012, there is a high possibility the movie was not deleted or removed from the infringer's hard disk.

d. There is also a third reason to assume that the film remains on the infringer's hard disk. The nature and philosophy behind file sharing networks is contained in the name itself. The purpose is to share/distribute. Such networks enable swarm members to achieve the common aim of distributing copyrighted works without permission. If an unlawfully obtained movie is removed from a swarm member's computer, the swarm is harmed in view of the decreased availability of collective bandwidth within the swarm. It also reduces the number of swarm members with a complete copy of the work by one. If the number of members with a complete copy of the work is low, this could cause the swarm to cease functioning effectively.

e. Furthermore, failing to share copyrighted content causes a user to lose respect within the Bit-Torrent community and that user is labeled the derogatory term of a 'leecher'. The effect of this is reduced cooperation by others within the same swarm resulting in reduced download speeds for the user who is taking, but not sharing. If the copyrighted work is not removed or deleted, the infringer may stay within the swarm to continue distributing and making available the movie for others to download.

f. For the most part, individuals unlawfully download and distribute copyrighted works are not one-time infringers. It is therefore likely that these infringers have filled their hard disks with unlawfully obtained copyrighted material.

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

Bit-Torrent Swarms – A Series of Transactions

30. Bit-Torrent swarms involve a series of individuals who participate in order to achieve the common aim of download and sharing a copy of the same movie. These transactions may involve users connecting with each other directly or indirectly.

31. A direct transfer occurs when user A transfers a piece of the movie to user B.

32. An indirect transfer occurs if user C obtains a piece of the same work which was originally distributed by user A from user B. In this scenario, user A transferred the piece to user B, who then subsequently transferred the same piece to user C.

33. Each of the swarm members made available the movie to other participants to download. Additionally, the monitoring software was able to download at least one piece of the movie from each of the swarm members in this complaint.

34. While I understand that this is not necessary for joinder, it is evident that users were engaging in Bit-Torrent transactions for this movie. I am able to produce the pieces downloaded by these users to the Court, if requested that I do so.

35. It is my opinion that this forms a series of transactions involving a logical relationship between participants in this swarm. All swarm members were acting on the basis of the same system which created a transactional relatedness. It is my understanding that this is sufficient grounds for Joinder. In these circumstances, it would be entirely arbitrary to focus on whether the Doe Defendants participated in the swarm simultaneously, rather than on whether there exists a 'series of transactions' that are logically related.

Reducing large swarms to a manageable size

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

36. The Bit-Torrent monitoring software I use detected infringements from mid-September 2012. That unlawful distribution continues today, as may be seen from www.thepiratebay.com when the film in question is typed into the search bar.

37. In order to assist the Court in managing this litigation, a specific time period was chosen. By way of explanation, it is my understanding that Doe defendants may file motions to quash if the motion for early discovery is granted. Some ISPs will request that the disclosure of subscriber details be withheld until those motions have been decided. The effect of this is the delayed disclosure of information, meaning that no requests may be made to those infringers to cease distributing the movie.

38. I am informed that this distribution is causing Plaintiff irreparable harm. This is due to users continuing to act as 'seeders'. The harm may be limited by ensuring that Does are made aware of the infringing activities occurring via their internet connection. This notice informs internet subscribers that they should take steps to put a stop to the infringing activity. As mentioned above, reducing the number of 'seeders' damages the swarm's health. If sufficient 'seeders' are warned and they cease to share the movie, then the swarm may not be at the critical mass necessary for it to function effectively.

39. These lawsuits represent no more than 20% of those infringing Plaintiff's work.

<u>Would the number of defendants be greater than presently named if there was no geographical limitation?</u>

40. The number of defendants within a swarm would be greater than presently named if there was not a geographic limitation applied to the defined swarm. This is because of the filtering which takes place due to jurisdictional and practical reasons, as set out above.

41. If there was no geographical limitation, the swarm size would increase to include individuals residing throughout the U.S.

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 23, 2013

Respectfully submitted,

/s/ Darren M. Griffin
Darren M. Griffin

Darrin Griffin Declaration
13-00277; 13-00278; 13-00287; 13-00288; 13-00289; 13-00256; 13-00255

Frontier Law Group, PLLC
1001 4th Ave, Suite 3200
Seattle, WA 98154
Office: 206-682-7975